UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS PINES,

    *Plaintiff*,

v.

JACKIE DYER; RICHARD CADY;
E. PAZITIKA; DEBRA L. SCUTT;
JOE BARRETT; JENNIFER ENGSTROM;
KEN RYAN; C. JOHNSON; HAMMOND;
DANIEL HEYNES; SHARON WILLIAMS
ALLEN, *also known as Williams*,

    *Defendants*.

CASE NO. 12-CV-12673

DISTRICT JUDGE GERALD E. ROSEN
MAGISTRATE JUDGE CHARLES BINDER

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
(Docs. 12, 18)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motions be **GRANTED**.

**II.   REPORT**

    **A.    Introduction**

On June 19, 2012, Plaintiff, a state prisoner currently housed at the G. Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan, filed this *pro se* federal civil rights action under 42 U.S.C. § 1983, alleging that his Eighth Amendment right to be free from cruel and unusual punishment was violated when the defendants failed to prevent him from being assaulted by his cellmate and that his due process rights were violated when he was ordered to return to the cell with the same cellmate who had assaulted him and, when he refused, was placed in

administrative segregation. (Compl., Doc. 1.) The events forming the basis for the complaint occurred while Plaintiff was housed at JCF. (*Id.*) On July 26, 2012, U.S. District Judge Gerald E. Rosen entered an order referring pretrial matters to the undersigned magistrate judge. (Doc. 9.) All defendants except Defendant Sharon Williams Allen ("Allen") filed a motion for summary judgment on September 21, 2012. (Doc. 12.) On January 8, 2013, Defendant Allen filed a motion for summary judgment, concurring in the motion filed by the other defendants. (Doc. 18.) Therefore, the motions may be considered together. Plaintiff responded on October 19, 2012. (Doc. 15.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), these motions are ready for report and recommendation without oral argument.

### B. Plaintiff's Complaint

Plaintiff's complaint avers:

In May, 2011, I was required by the Defendants herein to move in JCF cell E-14 with another prisoner named CHAPMAN who identified himself to me as being a white supremacist. He immediately informed me that he hates 'people of color.' (not his words).

I immediately put forth as many appropriate efforts with JCF staff to get moved from that cell as is attested to in the hereto attached exhibits, all to no avail whatsoever. C/O JACKIE DYER (formerly JACKIE HARRIS) told me to do the best I could, but that she wasn't going to move me from that cell just because I was 'sniveling' about living with a white supremacist. Also C/O DYER informed me that if she moved me, I would lose my institutional assignment, which would deprive me of any source of income at all.

Also, JCF E/F-Unit RUM RICHARD CADY and ARUS E. PAZITKA, JCF Warden DEBRA SCUTT; JCF Deputy Warden JOE BARRETT; JCF ADW Housing JENNIFER ENGSTROM; JCF ADW Custody-Programs KEN RYAN; JCF C/O WILLIAMS (Allen); JCF Acting GRIEVANCE COORDINATOR C. JOHNSON; JCF E-Unit HAMMOND; MDOC Directors Office personnel and others who I am not currently familiar with their names, who all were informed of the terrible situation I was in, and all of them, in acts of DELIBERATE INDIFFERENCE to the threat of harm against my person, chose to callously disregard my anguished pleas for help in resolving this terrible situation before physical injury occurred.

2

> On July 16, 2011, CHAPMAN assaulted me viciously with a padlock and broke my jaw in three places, causing me serious physical injury, which placed me in the Hospital for over a month to recover enough to be able to return to the general prison population.

(Doc. 1 at 6.) Plaintiff continues:

> When I was finally returned to JCF from the hospital, I was ORDERED by MDOC, JCF staff to return to the very same cell with CHAPMAN, where all my life was still in dire jeopardy. I informed staff of this, and they told me that if I did not return to that cell, that they would place me into ADMINISTRATIVE SEGREGATION (the hole) as punishment for failing to obey their direct order for me to place myself into a life threatening environment.
>
> No prisoner is required to obey any order from prison staff that the prisoner knows or reasonably believes would cause serious physical injury or death either to himself, or to anyone else.
>
> The actions of JCF staff placing me in the hole, and writing misconduct reports against me for my refusing to place myself into a dangerous, life threatening situation violates my DUE PROCESS guarantees, and is an egregious abuse of power and discretion by these staff members.

(*Id*. at 7.)

### C. Arguments of the Parties

Defendants raise the following arguments: (1) Plaintiff failed to exhaust administrative remedies because the one grievance that Plaintiff filed through Step III was rejected at all steps as untimely; (2) Plaintiff failed to state a claim against Defendant Dyer; and (3) all defendants are entitled to qualified immunity. (Doc. 12.)

Plaintiff responds that "within 48 hours after the Plaintiff was returned to the JCF prison, to GENERAL POPULATION STATUS, he obtained a Grievance Form, filled it out to the best of his ability, and sent it to the MDOC JCF Grievance Coordinator." (Doc. 15 at 6.)

### D. Motion Standards

3

A motion for summary judgment will be granted under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52).

**E.   Analysis and Conclusions**

**1.   Failure to Exhaust Administrative Remedies**

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to

4

prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

To exhaust a claim, a prisoner must proceed through all of the steps of a jail or prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23, 166 L. Ed. 2d 798 (2007).

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130(P). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). The grievance policy provides the following instructions regarding the information that needs to be included in a grievance:

5

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R).[1]

If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

In this case, Plaintiff's Step I grievance form indicated that the date of incident was July 16, 2011, and that Plaintiff attempted to resolve the issue on July 16, 2011, but that Defendant Dyer told him if he was moved from the cell with Chapman, he would lose his institutional assignment. (Doc. 12 at Ex. 1; Doc. 15 at Ex. C.) The grievance (JCF 11-10-2074-028E) was filed on September 29, 2011, and was denied as untimely on October 3, 2011, since Plaintiff had failed to file it within five days of the attempt to resolve the issue, which Plaintiff had indicated was July 16, 2011. (*Id.*) At Step II, Plaintiff argued that his grievance was not untimely because he was in the hospital for three months; however, the Step II and III grievances were denied as untimely. (*Id.*)

---

[1] The MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the July 2007 version – clearly requires this higher level of specificity.

6

Plaintiff did not name any of the other defendants in this case in the grievance nor did he file a grievance based on the conduct he alleges happened after he returned from the hospital, i.e., that he was ordered to return to the same cell with the assailant and, when he refused, he was placed in administrative segregation. (Doc. 1 at 7.) Since none of the defendants except Dyer were named in the grievance, even if the grievance had been filed in a timely manner, I suggest that Plaintiff failed to properly exhaust administrative remedies as to these defendants. Furthermore, since the due process claim raised by Plaintiff, i.e., that Defendants violated his due process rights by requiring him to either return to the cell with the same cellmate who assaulted him or to be placed in administrative segregation, was not mentioned in the grievance, I suggest that this claim was not "properly" exhausted. *See Woodford, supra*.

Defendant Dyer was named in the grievance that asserted a failure to protect claim under the Eighth Amendment, which was rejected as untimely. Plaintiff asserts that this rejection was in error. When a prisoner's grievance is rejected as untimely because it was not filed within the prison's prescribed period, the prisoner's claim is not properly exhausted for purposes of filing a section 1983 action. *Woodford*, 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). However, if the grievance was timely, Plaintiff would have properly exhausted his remedies as to Defendant Dyer. Plaintiff asserts that he filed his grievance "within 48 hours after the Plaintiff was returned to the JCF prison . . . and sent it to the MDOC JCF Grievance Coordinator." (Doc. 15 at 6.) Although it may seem implausible that Plaintiff would have spent an entire three-month period in the hospital for a broken jaw, Defendants have not submitted any evidence to the contrary and lack of exhaustion must be proven by Defendants. Thus, crediting Plaintiff's statement that he was in the hospital for three months, I find that that would provide a sufficient reason for delay in filing, especially where, as Plaintiff alleges, he filed the grievance

7

within 48 hours of having regained the ability to do so. "Physical or mental infirmities may render administrative remedies 'unavailable,' and excuse a prisoner from complying with the PLRA's exhaustion requirement." *Michalek v. Lunsford*, No. 4:11CV000685, 2012 WL 1454162, at *3 (E.D. Ark. Apr. 5, 2012) (collecting cases); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008) (excusing left-handed prisoner with a broken left arm from untimely exhaustion because he was unable to fill out grievance form). Therefore, for purposes of this motion, I will assume that Plaintiff properly exhausted his Eighth Amendment failure to protect claim against Defendant Dyer.

For the reasons stated above, I suggest that Plaintiff failed to exhaust his administrative remedies and therefore Defendants' motions for summary judgment should be granted with regard to all claims except Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Dyer.

### 2.     Defendant Dyer – Qualified Immunity

#### a.     Governing Principles

Defendant has raised the defense of qualified immunity, which "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly

8

established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); and *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; courts are now permitted to use their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (citations omitted).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of*

9

*Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

### b. Discussion

Plaintiff's complaint avers that after having been moved into a cell with Mr. Chapman, Mr. Chapman told Plaintiff he hates people of color and is a white supremacist. (Doc. 1 at 6.) Plaintiff then told staff, including Defendant Dyer, that he wanted to be moved away from the self-proclaimed white supremacist, but to no avail. (*Id.*) Plaintiff further alleges that Defendant Dyer told him to "do the best I could, but that she wasn't going to move me from that cell just because I was 'sniveling' about living with a white supremacist. Also C/O DYER informed me that if she moved me, I would lose my institutional assignment, which would deprive me of any source of income at all." (*Id.*) Defendant Dyer denies making the "sniveling" comment and contends that Plaintiff made the statement regarding losing his assignment if he were moved. (Doc. 12 at Ex. 2.) However, the parties do not dispute that on July 16, 2011, Plaintiff was assaulted by his cellmate, Mr. Chapman. For purposes of this motion, the Court will credit the facts as alleged by Plaintiff.

I suggest that Plaintiff's allegations fail to state an Eighth Amendment violation since there is no requirement that prison authorities endeavor to match prisoners with compatible cellmates. I note that Plaintiff did not allege that his cellmate was threatening to assault him, actually assaulting him, or placing him in danger in any way. *Cf. Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."); *Case v. Ahtow*, 301 F.3d 605, 605-06 (7th Cir. 2002) ("if [the defendants] behaved with deliberate indifference to the plaintiff's safety, meaning that they knew of a serious danger to him (really knew – not just

should have known, which would be all that would be required in a negligence case) and could easily have prevented it from materializing but failed to do so, they are liable").

Instead, Plaintiff reported only incompatibility problems which, even when ignored, are insufficient to state a claim of deliberate indifference to a risk of injury. *See Knight v. Gill*, 999 F.2d 1020, 1022 (6th Cir. 1993) ("the defendants did not have 'actual knowledge that the threat to Plaintiff's safety was imminent and extreme'" despite the plaintiff's "numerous" complaints of incompatibility problems and a desire to be reassigned but not to be placed in segregation); *Gibson v. Foltz*, 963 F.2d 851, 853-54 (6th Cir. 1992) (negligence in performing duties that may have prevented inmate assault is insufficient to state a claim); *Stuckey v. Thompson*, No. CV 405-216, 2001 WL 1035134, at *3, 6 (S.D. Ga. Mar. 29, 2007) (any threat must be a "particularized threat to plaintiff's safety" beyond simply knowledge that a prisoner is a problematic inmate because the constitution is triggered "only when the prisoner communicates that he is in serious danger").

I suggest that statements regarding the consequences of his being moved, i.e., that he would lose his assignment, whether made by Defendant Dyer or Plaintiff, are of no significance. Since Plaintiff was requesting to be moved, any undesirable consequences of moving could not show any bad faith on any defendants' decision not to move him. I therefore suggest that Plaintiff cannot show an Eighth Amendment violation occurred and that Defendant Dyer's motion for summary judgment should be granted as to this claim.

Even assuming, *arguendo*, that Plaintiff could show a constitutional violation, I suggest that any such violation would not have involved a clearly established constitutional right of which a reasonable person would have known. *See Radvansky,* 395 F.3d at 302. I therefore suggest that Defendant Dyer is entitled to qualified immunity and that the motion for summary judgment should be granted.

**F.  Conclusion**

For all the reasons stated above, I recommend that Defendants' motions for summary judgment be granted.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this report and recommendation. *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                                  s/ Charles E. Binder
                                                  CHARLES E. BINDER
Dated: February 14, 2013                United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal Service: Dennis Pines #198670, G. Robert Cotton Correctional Facility, 3500 N. Elm Road, Jackson, MI 49201.

Date: February 14, 2013                              By     s/Patricia T. Morris
                                                                       Law Clerk to Magistrate Judge Binder